UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMY MICHELLE DICUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LARRY FANNIN'S FAMILY FORD, LLC, | ) | |
| MR. DEVOY, f/n/u, | ) | 1:13-cv-01353-RLY-DML |
| GARY CHRISTOPHER STANLEY, | ) | |
| JARROD DUANE BRADBURY, | ) | |
| MIKE  SHEPHERD in his official capacity as | ) | |
| the Sheriff of Hancock County, and | ) | |
| RANDY  SERGENT, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT, LARRY FANNIN'S FAMILY FORD, LLC'S
MOTION TO DISMISS**

Plaintiff, Amy Michelle Dicus ("Ms. Dicus"), brought suit under 42 U.S.C. § 1983

alleging that the defendants conspired to violate her constitutional rights by causing her

to be arrested for a crime she did not commit.  Defendant, Larry Fannin's Family Ford,

LLC ("Fannin"), a company organized in the state of Kentucky, moves to dismiss the

complaint against it for lack of personal jurisdiction under Rule 12(b)(2)  of the Federal

Rules of Civil Procedure.  For the reasons indicated below, the motion is **DENIED**.

### I.     Background

In August 2012, Ms. Dicus viewed a 2007 Chevrolet Silverado on Fannin's website

that she was interested in purchasing.  (Complaint ¶¶ 17-19).  She contacted Fannin,

located in Flemingsburg, Kentucky, about the truck.  (*Id.* at ¶ 20).  Although she initially

discussed financing the truck, her poor credit report prevented her from obtaining financing.  (*Id.* at ¶¶ 21-24).  With no financing, she informed the employees of Fannin's that she would purchase the truck in cash.  (*Id.* at ¶ 26).  On August 31, 2012, Ms. Dicus paid $22,199 in cash for the truck.  (*Id.* at ¶ 30).  She received what she thought was a receipt and a Kentucky Certificate of Title to the truck, which an employee at Fannin signed.  (*Id.* at ¶¶31-32; Complaint Exhibits B and C).  The employee handed her the keys to the truck, and she drove it back to Indiana, where she lived.  (*Id.* at ¶¶ 35-36).  The employees knew she lived in Indiana.  (*Id.* at ¶ 79).  After returning to Indiana, Ms. Dicus transferred the title to her name with the assistance of Fannin.  (*Id.* at ¶¶ 37-40).

Approximately one month later, the Fleming Circuit Court in Kentucky issued an arrest warrant for Ms. Dicus based on statements made by Fannin employees.  (*Id.* at ¶¶ 69-70).  The employees told police in Kentucky and in Indiana that Ms. Dicus did not pay for the truck.  (*Id.* at ¶¶ 72-78; Affidavit of Darrell Polley, an employee of Fannin, ("Polley Aff.") ¶ 15).  As a result, Ms. Dicus was arrested in Indiana where she spent six days in jail before an officer transported her to Kentucky.  (*Id.* at ¶¶ 41, 53, 59).  On October 19, 2012, a grand jury returned an indictment for violation of Kentucky Statute 514.040, Theft by Deception, over $10,000.  (*Id.* at ¶¶ 41, 59-60; Exhibit E).  After her arrest, an employee from Fannin drove with a Kentucky officer to retrieve the truck from her home in Indiana.  (*Id.* at ¶ 67).  The Fannin employee drove the truck back to Fannin without any court order.  (*Id.* at ¶ 63; Polley Aff. ¶ 20).  Ms. Dicus filed this suit against Fannin and the officers from Indiana and Kentucky involved in her arrest.

## II.     Standard

The Plaintiff bears the burden of establishing personal jurisdiction; however, when the issue is raised at the motion to dismiss stage, a plaintiff need only make a prima facie showing of jurisdiction. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

To satisfy due process requirements, the court must have jurisdiction over the out-of-state defendants under both the state's long-arm statute and the Fourteenth Amendment's Due Process Clause. *See id.* In Indiana, the long-arm statute is satisfied if due process is satisfied. *See* Ind. Trial Rule 4.4(A); *see also Noble Roman's, Inc. v. French Baguette, LLC*, 684 F. Supp. 2d 1065, 1069 (S.D. Ind. 2010). Therefore, the court only needs to evaluate whether due process is satisfied.

To satisfy due process, the defendant must have had "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 673 (citations omitted). The defendant must have purposely established such contacts with the forum state "such that he should reasonably anticipate being haled into court." *Id.* Personal jurisdiction may be either general or specific; Plaintiff does not contend that the court has general jurisdiction. *Id.* Specific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct. *Id.*

There are three essential requirements for establishing specific personal jurisdiction:

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

3

*Felland*, 682 F.3d at 673.  Fannin only challenges that the defendant purposefully directed his activities at the state.  Three factors are needed to establish that the tortious conduct was "purposefully directed" at the forum state:  "(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state, and (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured, in the forum state."  *Id.* at 674-57 (internal citations omitted).

### III.    Discussion

Fannin argues that its contacts with the state of Indiana were too random, fortuitous and attenuated to constitute purposeful availment, and its only intentional conduct was reporting a stolen vehicle.  In support, Fannin notes that: (1) it is not registered, nor does it, do business in Indiana; (2) it has no offices or employees in Indiana; (3) it does not have any bank accounts in Indiana; and (4) it was not subject to service in the state of Indiana.  Ms. Dicus responds that Fannin purposely directed its conduct at Indiana when it conspired to have her rights violated in Indiana.  She relies on two cases for support. Fannin did not reply to Ms. Dicus' arguments.

First, Ms. Dicus relies on *Felland v. Clifton* to show that even less contact with the forum state can still constitute purposeful direction.  In *Felland*, Wisconsin residents travelled to Arizona and Mexico, where they entered into an agreement with Clifton to purchase a condominium in Mexico.  *Id.* at 669.  Clifton sent numerous emails, letters, and phone calls to the Fellands in Wisconsin to assure them that the project was properly financed and would be completed on time.  *Id.*  As a result of these misrepresentations, the Fellands continue to make incremental down payments to Clifton.  *Id.*  When the

4

condominium was not completed on schedule, the Fellands sued Clifton in Wisconsin for intentional misrepresentation. *Id.* The Seventh Circuit found specific jurisdiction existed because Clifton's communications were "lulling" communications that were expressly aimed at Wisconsin and therefore purposefully directed at that state. *Id.* at 676.

Next, Ms. Dicus relies on a Ninth Circuit case with a fact pattern closely resembling this case. *See Ziegler v. Indian River County*, 64 F.3d 470 (9th Cir. 1995). In that case, Ziegler, a fruit broker, wrote a check in California and mailed it to Florida to pay for fruit. *Id.* at 472. After mailing the check, Ziegler told the bank he no longer planned on conducting business; the bank froze his accounts. *Id.* The check then bounced; however, at the time the check was signed and mailed, sufficient funds were in the account. *Id.* at 472-73. The company demanded payment, and indicated it would report the bounced check to the state attorney's office in Florida. *Id.* The sheriff, despite learning via a subpoena that there were adequate funds, obtained a warrant for Ziegler's arrest charging grand theft. *Id.* at 473. Ziegler was arrested in California and extradition proceedings began to send him to Florida. *Id.* Subsequently, a Florida prosecutor moved to rescind Ziegler's arrest warrant. *Id.* Ziegler brought a Section 1983 action in California alleging a conspiracy to violate his rights against the Florida company and the Florida sheriffs. *Id.* The Ninth Circuit found that the district court had specific personal jurisdiction because the "alleged wrongful conduct was plainly aimed at California." *Id.* at 474. The court finds this case is highly persuasive.

In addition to the cases cited by Plaintiff, the court also finds *Martin v. Gorajec* to be instructive. 1:12-cv-00460-TWP, 2013 WL 319783 (S.D. Ind. Jan. 28, 2013) *amended,*

1:12-cv-00460-TWP, 2013 WL 1327312 (S.D. Ind. Mar. 29, 2013).  In that case, a veterinarian in Florida sent an email to members of a horse investigatory agency in Indiana reporting abuse at Martin's horse farm in Florida.  *Id.* at ** 1-2.  The veterinarian sent the email at the request of an Indiana citizen.  *Id.*  This email resulted in an investigation by an Indiana agency into the Florida farm and numerous publications accusing Martin of crimes.  *Id.*  Martin brought suit alleging a conspiracy to interfere with his civil rights; the veterinarian filed a motion to dismiss for lack of personal jurisdiction.  *Id.* at ** 3, 9.  Despite the fact that the veterinarian only sent one email to Indiana, the court denied her motion because she could have declined to report the allegedly abusive behavior and be part of the conspiracy if she did not want to avail herself of this court's jurisdiction.  *Id.* at * 10.

The court, at this stage, accepts as true all well-pleaded facts alleged in the complaint and resolves any factual disputes in the affidavits in favor of the plaintiff.  *Felland*, 682 F.3d at 672.  Thus, the Fannin employees did more than just report an allegedly stolen vehicle; they conspired to have Ms. Dicus arrested in Indiana and her truck taken from her in Indiana.  As part of this conspiracy, the employees made false reports to law enforcement in Indiana and Kentucky.  In addition, after succeeding in having Ms. Dicus arrested, an employee drove to Indiana with an officer to take the truck back to Kentucky.

As in *Ziegler* and *Martin*, conspiring to have Ms. Dicus' rights violated in Indiana is intentional conduct that is expressly aimed at this state.  Fannin knew that the effects of the conspiracy would be felt in Indiana because they knew she would be arrested in

Indiana.  Thus, the conduct of Fannin's employees was "purposefully directed" at the forum state and satisfies the first prong of the due process requirement.

## IV.     Conclusion

Fannin purposefully directed its activities at this forum because it conspired to violate Ms. Dicus' constitutional rights while she lived in Indiana.  The court finds that Ms. Dicus has met her burden of establishing a prima facie case of personal jurisdiction under the Fourteenth Amendment's Due Process Clause.  Therefore, Fannin's Motion to Dismiss (Docket # 21) for lack of personal jurisdiction is **DENIED**.


**SO ORDERED** this 2nd day of January 2014.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.